Slip Op. 09-75

UNITED STATES COURT OF INTERNATIONAL TRADE

|   |   |
|---|---|
| MICHAEL SIMON DESIGN, INC., TRU 8, INC. d/b/a ARRIVISTE, and TARGET STORES, a division of TARGET CORPORATION, | : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| UNITED STATES, | : : |
| Defendant. | : : : |

Before: Hon. Judith M. Barzilay
Consol. Court No. 09-00016

**OPINION**

[Defendant's Motion to Dismiss is granted.]

Dated:  July 20, 2009

*Barnes, Richardson & Colburn* (*Alan Goggins*, *Eric W. Lander*), for Plaintiffs.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Branch Director, *Mikki Cottet*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Of Counsel: *Karl S. von Schriltz*, Attorney, Office of General Counsel, U.S. International Trade Commission, *Yelena Slepak*, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection), for Defendant.

**BARZILAY, JUDGE:**  This case adds yet another chapter to the long story of the classification of certain holiday apparel and other utilitarian holiday merchandise, an issue to which this court and the Federal Circuit has dedicated a considerable amount of attention. *See*,

*e.g.*, *Michael Simon Design, Inc. v. United States*, 501 F.3d 1303 (Fed. Cir. 2007); *Park B. Smith, Ltd. v. United States*, 347 F.3d 922 (Fed. Cir. 2003); *Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423 (Fed. Cir. 1997). Here, Plaintiffs Michael Simon Design, Inc., Tru 8, Inc. d/b/a Arriviste, and Target Stores, a division of the Target Corporation (collectively, the "Plaintiffs") challenge those changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), which were initially recommended by the U.S. International Trade Commission ("ITC") and ultimately given legal effect by the President of the United States ("President") in the early part of 2007.[1] Proclamation No. 8097, 72 Fed. Reg. 453 (Jan. 4, 2007) ("*Proclamation No. 8097*"). Defendant United States moves to dismiss Plaintiffs' claims (1) for lack of subject matter jurisdiction under 28 U.S.C. § 1581(i) and (2) for failing to state a claim upon which relief may be granted.[2] Alternatively, if the court has jurisdiction over Plaintiffs' challenge to the ITC's recommendations, Defendant argues that the complaints should be dismissed because (3) they are untimely and (4) Plaintiffs failed to exhaust their administrative remedies. For the reasons stated below, the court finds that it is without jurisdiction to hear Plaintiffs' claims and, therefore, grants Defendant's Motion to Dismiss.

---

[1] Plaintiffs in this case make claims identical to the ones raised in a host of related cases – Court Nos. 09-00015, 09-00017-00024, 09-00036-00038, 09-00135, 09-00164-00165, and 09-00189 – and the court has stayed those cases pending the resolution of this action.

[2] The complaints ("Compl.") filed in Court Nos. 09-016 and 09-039 are nearly identical, with references to the individual plaintiffs in each action being the lone exception.

Consol. Court No. 09-00016                                                                                          Page 3

## I. Background

**A. The Harmonized System & the Harmonized Tariff Schedule of the United States**

In 1983, members of the Customs Co-operation Council – a multilateral customs organization now operating as the World Customs Organization ("WCO") – agreed to the *International Convention on the Harmonized Commodity Description and Coding System* (June 14, 1983) (the "*Convention*"). *See* Def. Br. Ex. B. The *Convention* established the Harmonized System, which was "the culmination of a ten-year effort by the United States and its major trading partners [that] develop[ed] a single modern product nomenclature for international use as a standard system of classifying goods for customs." *Faus Group, Inc. v. United States*, 28 CIT 1879, 1881 n.5, 358 F. Supp. 2d 1244, 1247 n.5 (2004) (quotations & citations omitted). On August 23, 1988, Congress passed legislation implementing the *Convention* in the Omnibus Trade and Competitiveness Act of 1988, an act which incorporates, among other measures, the Harmonized System into United States law as the HTSUS. Pub. L. No. 100-418, 102 Stat. 1107. The U.S. Customs & Border Protection ("Customs") has classified products entering the U.S. according to the HTSUS since January 1, 1989, the date the legislation implementing the *Convention* took effect. 19 U.S.C. § 1202.

The Omnibus Trade and Competitiveness Act authorizes the President, among other actions, to modify the HTSUS based on the recommendation of the ITC so long as the changes (1) are in conformity with the obligations of the U.S. under the *Convention* and (2) do not run counter to the economic interest of the U.S.[3] 19 U.S.C. § 3006(a). The President may proclaim a

---

[3] The WCO, through the proposals of the Harmonized System Committee and the Review Subcommittee, may propose amendments to adapt the Harmonized System to changing

modification to the HTSUS only after the expiration of a period of sixty legislative days, which begins on the date that the President submits a report to the U.S. House of Representatives Committee on Ways and Means and to the U.S. Senate Committee on Finance.[4]  The President's report to the two congressional committees must outline the proposed modification and the reasons for making it.  § 3006(b)(1).  Each modification announced by the President takes effect thirty days after the proclamation is published in the Federal Register.  § 3006(c).

The ITC assists the President in this modification process by keeping the HTSUS under "continuous review" and by recommending to the President those changes that are "necessary or appropriate" for the U.S. to conform with its obligations under the *Convention*.  19 U.S.C. § 3005(a)(1).  Upon receiving the proposed amendments from the WCO, the ITC conducts an investigation into the modifications that are necessary to conform the HTSUS with the Harmonized System, invites public comment, and ultimately issues a final report making specific recommendations to the President.  § 3005(b)-(c).  The ITC must make certain that its proposed modifications are consistent with the *Convention* and "sound nomenclature principles," and must also ensure that the changes maintain "substantial rate neutrality."[5]  § 3005(d)(1)(A)-(C).

---

technologies and trade patterns.  *See Convention* art. 16.  When the WCO adopts an amendment to the Harmonized System, the *Convention* deems that the contracting parties automatically accept those changes six months after their issuance, unless there is an objection from one or more of the parties.  *See Convention* art. 16, ¶ 3.  Under the terms of the *Convention*, the contracting parties must update their tariff schedules to reflect the accepted amendments to the Harmonized System.  *See Convention* art. 16, ¶ 5.

[4] The term "legislative days" excludes Saturdays, Sundays, and any other day in which either the U.S. House of Representatives or U.S. Senate is not in session.  § 3006(b)(1)-(2).

[5] In simple terms, a substantially rate neutral modification to a provision of the HTSUS is one that does not significantly alter the applicable duty rate.  However, the obligation imposed on

...
...

**B. The Proposed Amendments to the Harmonized System & Subsequent Developments**

In June 2004, the WCO proposed several amendments to the Harmonized System, including Note 1(v) to Chapter 95,[6] which added the following to a list of items already excluded from Chapter 95:

> Tableware, kitchenware, toilet articles, carpets and other textile floor coverings, apparel, bed linen, table linen, toilet linen, kitchen linen and similar articles having a utlilitarian function (classified according to their constituent material).

*Proposed Modifications to the Harmonized Tariff Schedule of the United States*, USITC Pub. 3851, Inv. No. 1205-6 at B-139 (Apr. 2006), Def. Br. Ex. A ("*Final Report*"). Note 1(v) also referred to proposed subheadings 9817.95.01 and 9817.95.05, which assigned special duty rates to certain utilitarian articles.[7]

Pursuant to 19 U.S.C. § 3005 and based on these proposed amendments from the WCO, the ITC instituted investigation number 1205-6 ("Investigation No. 1205-6") on September 8, 2004. *Proposed Modifications to the Harmonized Tariff Schedule of the United States*, 69 Fed. Reg. 55,461 (ITC Sept. 14, 2004). In that notice, the ITC stated that it would issue a preliminary

---

the ITC is not absolute, and the agency may recommend a rate change to a provision of the HTSUS so long as said change is "consequent to, or necessitated by, nomenclature modifications that are recommended under [§ 3005]." § 3005(d)(2).

[6] Chapter 95 of the Harmonized System covers "Toys, games and sports equipment; parts and accessories thereof." *See* HTSUS Chapter 95.

[7] Specifically, proposed subheadings 9817.95.01 and 9817.95.05 offered duty-free entry for utilitarian articles imported from countries other than Cuba or North Korea that (1) are "of a kind used in the home in the performance of specific religious or cultural ritual celebrations for religious or cultural holidays, or religious festive occasions . . ." or (2) are "in the form of a three-dimensional representation of a symbol or motif clearly associated with a specific holiday in the United States." *Final Report* at B-141.

report on the proposed amendments no later than the end of February 2005. *Id*. at 55,462. The ITC also invited interested parties to comment on its preliminary report within thirty days, or no later than November 1, 2004. *Id*. When the ITC issued its preliminary report in February 2005, it forwarded that report to the U.S. Trade Representative ("USTR") along with the comments it received from four interested domestic parties and from Customs.[8] *Final Report* at 2, Apps. E to I. Two of these comments, one submitted by the Foreign Trade Association of Southern California and the other by the Toy Industry Association, advanced arguments similar to those now made by Plaintiffs, *i.e.*, that the proposed Note 1(v) to Chapter 95 and subheading 9817.95.05 would conflict with recent judicial determinations which allegedly held that all holiday-related articles, including utilitarian ones, should receive duty-free treatment as "festive articles" under said Chapter. *Final Report* at G-2 to G-9, H-3 to H-4. Importantly, Plaintiffs did not submit comments to the ITC in conjunction with Investigation No. 1205-6.[9] In February 2005, Customs responded with two letters addressing the comments received by the ITC from the domestic interested parties. *Final Report* at I-1 to I-9. When the ITC issued its final report in April 2006, the agency submitted its recommendations to the President. *Final Report* at 1.

---

[8] Some affected firms chose to respond, for instance Boen Hardwood Flooring, Inc. submitted comments addressing the proposed changes to Chapter 44 of the HTSUS and the effect it might have on the certain wood flooring products. *Final Report* at E-1 to E-4. Comments from Bauer Nike Hockey, USA addressed the alleged effect that the proposed changes to Chapter 95 would have on its importation of certain hockey pants. *Final Report* at F-1 to F-3.

[9] Plaintiffs first raised their concerns about the changes to the HTSUS in a November 2006 letter to the USTR. Compl. Attach. 1. However, Plaintiffs did not inform the ITC of its objection to the changes until April 17, 2008, more than one year after the modifications took effect. Compl. Attach. 2. Further, the court is unaware of any attempt by Plaintiffs, even in those cases stayed pending resolution of the present case, *see supra* n.1, to submit comments to the ITC regarding the proposed changes to the HTSUS that comprised Investigation No. 1205-6.

**Consol. Court No. 09-00016**                                                                                         Page 7

The President issued Proclamation 8097 and adopted the ITC's recommended modifications, following the required lapse of sixty days and after allowing time for congressional review of the proposed changes under § 3006(b)(1)-(2). *Proclamation No. 8097*, 72 Fed. Reg. 453 (Jan. 4, 2007). The modifications became effective on February 3, 2007, exactly thirty days after the Federal Register first published the President's proclamation. 72 Fed. Reg. at 458.

## II. Standard of Review

The Court assumes that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiffs' favor when it decides a motion to dismiss based upon either lack of subject matter jurisdiction or failure to state a claim for which relief may be granted. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991).

A fundamental question in any action before the Court is whether subject matter jurisdiction exists over the claims presented. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the [C]ourt cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868). The party invoking the Court's jurisdiction bears the burden of establishing it. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

Finally, assuming that all of the factual allegations are true, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged," thereby raising the plaintiff's right to relief above the speculative level. *Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Though detailed factual allegations are not required, more than labels and conclusions, and a formulaic recitation of the elements of a cause of action are needed for the plaintiff's complaint to provide the defendant with fair notice of its claims and survive a motion to dismiss for failure to state a claim upon which relief may be granted. *See id*. at 1949; *Twombly*, 550 U.S. at 555. Even assuming that all of the factual allegations in the complaint are true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III.  Discussion

**A. Subject Matter Jurisdiction: The President's Modification of the Harmonized Tariff Schedule of the United States & 28 U.S.C. § 1581(i)**

For the first time, the court must determine whether a challenge to the President's modification of the HTSUS falls within its exclusive subject matter jurisdiction under § 1581(i). Defendant moves to dismiss the action because Plaintiffs allegedly failed to plead a cause of action under the Administrative Procedure Act ("APA"). Def. Br. 10-18. More specifically, Defendant alleges that Plaintiffs may not challenge the ITC's actions, which Plaintiffs characterize as the ITC's "decision to implement" modifications to the HTSUS, because the ITC made no such "decision." Def. Br. 11-13; Compls. ¶¶ 30, 32, 36-39, 41. Defendant also argues

that Plaintiffs may not challenge (1) the Presidential proclamation that modified the HTSUS or (2) the ITC's recommendations, since neither is final agency action for purposes of the Court's review under the APA. Def. Br. 13-18. Finally, Defendant avers that Plaintiffs lack any non-statutory right to challenge the President's actions in this case. Def. Br. 18-20.

Plaintiffs contend, on the other hand, that its claims are exactly the type that fall under § 1581(i). First, Plaintiffs explain that they are challenging the lawfulness of a statute, and that jurisdiction is proper here under § 1581(i)(1), (2) or (4). Pl. Br. 11-14. Specifically, Plaintiffs argue that § 1202, which codifies both the newly adopted Note 1(v) to Chapter 95 and subheading 9817.95.05 of the HTSUS, is unlawful because the ITC's recommendations to modify the HTSUS did not ensure substantial rate neutrality, in violation of 19 U.S.C. § 3005(d). Accordingly, Plaintiffs aver that the President abused his discretion to adopt recommendations to modify the HTSUS under 19 U.S.C. § 3006(a) when he relied on ITC recommendations that did not comply with § 3005. Pl. Br. 15-21. Second, Plaintiffs aver that if the court were to require a final agency action in this matter, it would render § 3005(d) meaningless because their would be "no realistic way" for a party to challenge the ITC's violation thereof. Pl. Br. 21-23.

### 1. General Requirements to Establish Jurisdiction under 28 U.S.C. § 1581(i)

Chapter 95 of Title 28 of the United States Code contains Congress's jurisdictional grant to the Court. The first section, § 1581, is titled "Civil actions against the United States and agencies and officers thereof" and consists of subsections (a) through (j). Each subsection of § 1581 "delineates particular laws over which the [Court] may assert jurisdiction." *Nat'l Corn*

**Consol. Court No. 09-00016**                                                                                                    Page 10

*Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988).  In § 1581(i),[10] Congress provides the Court with broad residual jurisdiction over civil actions that arise out of import transactions.  *See Conoco, Inc. v. United States Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed. Cir. 1994).

To invoke the Court's subject matter jurisdiction under § 1581(i), a plaintiff must suffer a legal wrong because of agency action "'or [be] adversely affected or aggrieved by agency action within the meaning of a relevant statute.'"  *See Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 702); *see Volkswagen of America, Inc. v. United States*, 532 F.3d 1365, 1369 (Fed. Cir. 2008).  The United States Code defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  Where no statute provides a private right of action and the plaintiff's challenge is made under the general-review provisions of the APA, the agency action

---

[10] In relevant part, § 1581(i) states:

In addition to the jurisdiction conferred upon the [Court] by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the [Court] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for –

    (1) revenue from imports or tonnage;
    (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
    (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
    (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

§ 1581(i).

complained of must be "final" to be subject to judicial review.  *See Norton*, 542 U.S. at 61-62 (quoting 5 U.S.C. § 704).

    **2. The *Final Report*, *Proclamation No. 8097* & the APA**

The court does not have subject matter jurisdiction over Plaintiffs' challenge to the modifications to the HTSUS under § 1581(i).  When the court's subject matter jurisdiction is in question, the court must examine the true nature of the action.  *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  Throughout their complaint, Plaintiffs state that they are challenging the ITC's "decision to implement" modifications to the HTSUS.  *See* Compls. ¶¶ 30, 32, 36-39, 41.  However, the problem with Plaintiffs' complaints is that Congress did not bestow on the ITC the authority to make such a decision.  The authority to modify the HTSUS lies with the President, who may do so, at his complete discretion, based on the recommendations by the ITC.  § 3006(a).  The title to § 3006 reads "*Presidential action* on [ITC] recommendations," which emphasizes that it is solely the President who acts to amend the HTSUS.  § 3006 (emphasis added).  In modifying the HTSUS, the President's act is self-executing, taking effect after (1) the President presents the proposed modifications in a report to the "Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate" and (2) the Federal Register publishes the Presidential proclamation. § 3006(b)(1)-(2), (c).  The ITC merely plays an advisory role in the modification process by recommending those changes that are "necessary or appropriate" to the President.  § 3005(a). Nowhere in the statutory scheme does Congress expressly state, or otherwise imply, that the ITC's recommendations are to bind the President when he ultimately modifies the HTSUS, or

Consol. Court No. 09-00016									Page 12

that the President shall not act if the ITC's recommendations are unlawful. 19 U.S.C. §§ 3001-3012. Instead, the ITC's recommendations are consultative in nature and the President has the absolute discretion to accept or reject them.[11] § 3006(a).

That the President may base his modifications on the recommendations submitted by the ITC does not mean that § 3006(a) prohibits the President from modifying the HTSUS unless the ITC's recommendations are lawful. The text of § 3006 merely identifies the source of the recommendations – the ITC – and recognizes that the President may utilize, but is not bound by, the agency's recommendations in making a decision. The only language in § 3006 that arguably constrains the President's decision is self-limiting, as it is solely for the President to decide whether to modify the HTSUS in light of U.S. obligations under the *Convention* and the nation's economic interests. § 3006(a)(1)-(2).

*Proclamation No. 8097* is a presidential act that falls outside the scope of the Court's review of actions filed under the APA. It is well established that the President's actions are not subject to review under the APA because the President is not an "agency" within the meaning of the APA. *Dalton v. Specter*, 511 U.S. 462, 470 (1994); *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992). Therefore, no federal court may hear Plaintiffs' challenge to the President's amendment to Chapter 95 Note 1 of the HTSUS, or his addition of subheading 9817.95.05 thereto. Similarly, where the President has complete discretion in taking an action, just as he

---

[11] If there was a question as to whether the ITC appropriately fulfilled its statutory duty under § 3005(d)(1)(C), then Plaintiffs should have raised that concern before the November 1, 2004 deadline. *See Proposed Modifications to the Harmonized Tariff Schedule of the United States*, 69 Fed. Reg. at 55,462. The court does not decide or conclude here, however, that Plaintiffs are foreclosed from utilizing their protest remedy to challenge Customs' classification of their entries based on either of the new provisions.

Consol. Court No. 09-00016                                                                                           Page 13

does here under § 3006(a), courts are without the authority to review the validity of an agency recommendation to the President regarding such action. *See Corus Group PLC v. Int'l Trade Comm'n*, 352 F.3d 1351, 1358 (Fed. Cir. 2003) (citing *Dalton*, 511 U.S. at 469-70; *Franklin*, 505 U.S. at 797-99). Here, the ITC's *Final Report* and the recommendations contained therein "carry no direct consequences" because "the action that will directly affect the [HTSUS] is taken by the President." *Dalton*, 511 U.S. at 469 (quotations omitted); *see Franklin*, 505 U.S. at 797-98. Thus, the court may not review the lawfulness of those recommendations under the facts of this case. *Cf. Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Finally, because the court finds that it does not have jurisdiction over Plaintiffs' claims, there is nothing left for it to decide and it must therefore dismiss this action. *See Ex parte McCardle*, 74 U.S. at 514.

## IV. Conclusion

For the reasons discussed herein, Defendant's Motion to Dismiss is granted. The President's modification of the HTSUS under § 3006(a) is not an agency action subject to judicial review under the APA, thereby placing it outside the purview of the Court's subject matter jurisdiction. Moreover, controlling precedent prevents Plaintiffs from challenging the lawfulness of the ITC's recommendations.

Date:  July 20, 2009                                                          /s/ Judith M. Barzilay
          New York, New York                                           Judith M. Barzilay, Judge

Slip Op. 09-75

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MICHAEL SIMON DESIGN, INC., TRU 8, INC. d/b/a ARRIVISTE, and TARGET STORES, a division of TARGET CORPORATION, | |
| Plaintiffs, | **Before: Hon. Judith M. Barzilay** |
| | **Consol. Court No. 09-00016** |
| v. | |
| UNITED STATES, | |
| Defendant. | |

## JUDGMENT

Upon consideration of the Motion to Dismiss and the accompanying brief submitted by Defendant United States, as well as all briefs filed in response to that Motion by Plaintiffs Michael Simon Design, Inc., Tru 8, Inc. D/b/a Arriviste, and Target Stores, a division of Target Corporation, the court's opinion in this action on July 20, 2009, and all other papers filed in this action, it is hereby

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that this case, Consol. Court No. 09-00016, is **DISMISSED**.

Date: July 20, 2009  /s/ Judith M. Barzilay
New York, New York  Judith M. Barzilay, Judge

# NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

      or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____   By: _____
                                                                                        Deputy Clerk